UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Billy Lee Lisenby, Jr., | ) | C/A No. 5:14-cv-1546-DCN-KDW |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Leroy Cartledge, Warden, McCormick Correctional Institution, | ) ) | |
| | ) | |
| Respondent. | ) ) | |

Petitioner Billy Lee Lisenby, Jr. ("Petitioner"), a state prisoner, filed this pro se Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241challenging a disciplinary conviction.[1] Petitioner filed a Motion for Summary Judgment on June 12, 2014. ECF No. 18. Respondent filed a Motion for Summary Judgment on July 3, 2014. ECF No. 22. Respondent's Motion for Summary Judgment and accompanying Memorandum are being considered his response to Petitioner's Motion for Summary Judgment. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and of the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 23. Petitioner filed a response in opposition to Respondent's Motion for Summary Judgment on August 15, 2014. ECF No. 40. This matter is before the court pursuant to 28 U.S.C.

---

[1] The court notes that, while challenges to prison disciplinary actions and calculations of good time credits may be petitioned under § 2241as Petitioner does in this case, ECF No. 1 at 1, some authority provides that "state prisoners who seek federal habeas relief must proceed under § 2254." *Tippett v. McCall*, C/A No. 1:09-593-HMH-SVH, 2011 WL 441942, at *2 (D.S.C. Feb. 7, 2011); *see also Medberry v. Crosby*, 351 F.3d 1049 (11th Cir. 2003) (discussing legislative history of federal habeas corpus). The Fourth Circuit has not yet spoken definitively on the issue. *See Gregory v. Coleman*, No. 06-6646, 2007 WL 570522 (4th Cir. Feb. 20, 2007) (noting trend toward use of only § 2254 to challenge disciplinary convictions, but not taking a definitive position). *Cf. Meeks v. McKoy*, No. 09-6208, 2010 WL 1050047 (4th Cir. March 23, 2010) (holding that § 2254's one-year statute of limitations applied to challenge of state prison disciplinary conviction filed on a § 2254 petition form).

§ 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), for a Report and Recommendation on Petitioner's and Respondent's Motions for Summary Judgment, ECF Nos. 18, 22. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Petitioner's Motion for Summary Judgment be denied and that Respondent's Motion for Summary Judgment be granted.

I.     Factual and Procedural Background

Petitioner is currently confined in the South Carolina Department of Corrections ("SCDC") at Lieber Correctional Institution. At the time he submitted this Petition, he was incarcerated at McCormick Correctional Institution. ECF No. 1 at 1. He was housed at Turbeville Correctional Institution when the incident underlying the disciplinary conviction which is the subject of this Petition took place. ECF No. 22-3 at 1 (DHO's report and hearing record). According to the charge filed against him, on March 30, 2009, Petitioner allegedly struck Corporal Natasha Miller ("Miller" or "Corporal Miller") on the left side of her face. Miller prepared an incident report charging Petitioner with Assault and Battery of an Employee Causing Harm # 801. ECF No. 43 at 1. An initial hearing was conducted on April 16, 2009, and Petitioner was found guilty of the charge and sanctioned to 720 days of disciplinary detention and forfeiture of 120 days of accrued good time credits. ECF No. 43 at 34 (report of initial hearing in the ALC record). Based on Petitioner's SCDC grievances that Petitioner filed following the original hearing, a re-hearing on the disciplinary charge was conducted on October 26, 2009. ECF No. 22-3 at 2. Petitioner, his counsel substitute, and the DHO were physically present at the rehearing. *Id*. at 2. Miller testified at the hearing through "speakerphone." *Id*. at 2, 4-5. Although Petitioner had provided his counsel substitute with the names of ten potential witnesses, when Petitioner asked about them at the re-hearing, his counsel substitute responded that she did not

"receive anything from any individual from his witnesses or the names he gave me for them to go around . . . to get statements from." *Id*. at 5. Petitioner did not specifically object to the absence of his witnesses or complain about the quality of his counsel representative's services during the re-hearing. *Id*.

According to Miller's incident report, Miller gave Petitioner a verbal directive to return to his unit. ECF No. 43 at 36. Miller wrote that Petitioner became disrespectful toward her and when she gave him a directive to stop being disrespectful, Petitioner struck Miller on the left side of her face and left eye. *Id.* According to the DHO, a copy of Miller's personnel record was available at the re-hearing and it showed that Miller was out of work on "I/M assault leave" from March 30 through May 16, 2009. ECF No. 22-3 at 3. Petitioner did not object to Miller's testimony by speaker phone, but he did object to the DHO's consideration of the personnel record on re-hearing because it was not produced at the original hearing. *Id*. Petitioner testified that Miller instigated the confrontation with him when she "choked" him and "grabbed" his neck, causing bruises. *Id*. at 4. On the speakerphone, Miller denied that she ever touched Petitioner. *Id*. The DHO found Petitioner guilty as charged and imposed a penalty of a "verbal reprimand, 150 days loss of good time, phone, canteen & visits suspended 180 days each, 720 days disciplinary detention." *Id*. at 5. According to the DHO, the detention and sanctions were imposed "based on [Petitioner's] prior history of assaulting employees, the nature & seriousness of the offense & the extent of injury to Cpl. Miller . . . ." *Id*.

Petitioner appealed this conviction on October 27, 2009 through several grievances, with grievance RCI-0917-09 being the grievance that Petitioner appealed through the state courts. ECF No. 22-6. SCDC issued its final decision at the Step 2 phase on April 30, 2010. *Id.* Petitioner filed a timely appeal to the South Carolina Administrative Law Court ("ALC"), and,

3

on January 28, 2011, that court issued a six-page written order rejecting Petitioner's constitutional claims and affirming SCDC's final agency action. ECF No. 22-7. Petitioner then filed a timely appeal to the South Carolina Court of Appeals, which, following briefing by both parties, affirmed the ALC's decision. ECF No. 22-8; *see Lisenby v. S. C. Dep't of Corr.*, No. 2012-UP-411 (S.C. Ct. App. July 11, 2012). The Court of Appeals' opinion addressed both the due-process and substantial-evidence arguments that Petitioner raises in the Petition filed in this case. Petitioner then petitioned the South Carolina Supreme Court for a writ of certiorari to review the Court of Appeals' decision. The petition was denied on March 19, 2014. ECF No. 22-9. The Court of Appeals sent its remittitur to the clerk of the ALC on April 1, 2014. ECF No. 22-10. Petitioner filed this federal habeas corpus action by depositing it with the McCormick Correctional Institution mailroom on April 9, 2014. ECF No. 1-2; *see Houston v. Lack*, 487 U.S. 266 (1988).

II.   Discussion

A.   Federal Habeas Issues

Petitioner raises the following issues in his federal petition[2] for a writ of habeas corpus:

1. Ground One: "The Petitioner has been deprived of his constitutional right to due process under the *Wolff*[3] criteria as set forth by the U.S. Supreme Court. During the Petitioner's disciplinary hearing he was denied the Right to call witnesses and the Right to present exculpatory evidence."

2. Ground Two: "The DHO failed to afford Petitioner due process under the comports of *Wolff* and Agency policy . . . [when t]he DHO convicted him of a 2nd offense and sentenced him to 720 days Disciplinary Detention . . . , used a 1999 conviction to enhance his 801 Assault and Battery to a 2nd offense . . . , [did] not note on Petitioner's 19-28A Form . . . [that] Petitioner suffers from intermediate explosive

---

[2] Petitioner did not submit his Petition on the standard form document, but instead submitted a handwritten, personally prepared pleading.

[3] *Wolff v. McDonnell*, 418 U.S. 539 (1974).

4

>   disorder and was not being treated or seen by mental health at the time of the assault . . . , by re-hearing cases that have been overturned at the Step 2 level and ALJ . . . , [and] used additional evidence at this hearing. . . . Petitioner's due process rights were violated when the Respondent failed to abide by [SCDC's inmate grievance policy] 'time limits.'"

3. Ground Three: "Petitioner's constitutional rights were violated when the DHO violated policy and punished him for utilizing his appeal rights and giving him a harsher sentence on his Rehearing by taking 150 days goodtime when in the original case they only took 120 days goodtime."

ECF No. 1 at 2, 7-10, 13. Petitioner supplemented his Petition on May 20, 2014 to claim that he received "new evidence" showing that SCDC cannot trace internal phone calls even though his counsel substitute might have been relying on Corporal Miller (who Petitioner alleges was dispatching calls that day) to contact Petitioner's witnesses through a phone call she allegedly made to Turbeville Correctional Institution, but which the counsel substitute claimed was unsuccessful. Petitioner asserts that "the DHO should've made an attempt to interview [his] witnesses on the record." ECF No. 1-4 at 2. Petitioner requests that his disciplinary conviction be dismissed and the disciplinary findings revoked. ECF No. 1 at 14. Petitioner also asks this court to join an issue to his Petition regarding his request for sentence reduction based on allegations that he "substantially assisted [two SCDC officers] from being seriously injured or killed." ECF No. 1-3 at 2.

   B.     Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id*. at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    C.    Habeas Corpus Standard of Review

        1.    Generally

A state prisoner challenging a prison disciplinary violation may seek habeas relief through either 28 U.S.C. § 2241 or § 2254. *See supra* note 1. Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In this case, Petitioner seeks relief from disciplinary detention and the loss of good-time credits stemming from an SCDC disciplinary hearing. "Habeas corpus is the appropriate mechanism for a state prisoner to challenge 'the fact or duration of his confinement,' which includes the loss of good time credits." *Lindsey v. McKie*, C/A No. 9:11-695-MBS, 2012 WL 932017, at *4 (D.S.C. Mar. 19, 2012) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005); *Preiser v. Rodriguez*, 411 U.S. 475 (1973)). "Before a prisoner may be deprived of a protected liberty interest in good time credits, he must be given some procedural protection. This includes '(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.' Additionally, 'some evidence' must support the decision by prison officials to revoke good time credits." *Lindsey*, 2012 WL 932017, at *5 (citing

7

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454-55 (1985)). "The 'some evidence' standard is a lenient one, requiring no more than 'a modicum of evidence' and is met if there is any evidence in the record that could support the decision." *Soliz v. Drew*, No. 8:11-cv-00562-MBS-JDA, 2012 WL 1825237, at *8 (D.S.C. Apr. 16, 2012) *adopted by* 2012 WL 1825239 (D.S.C. May 18, 2012) (citing *Superintendent, Mass. Corr. Inst.*, 472 U.S. at 456).

    2.    Procedural Bar

Although the exhaustion provisions codified under § 2254 are not contained in § 2241, the exhaustion requirement "applies to all habeas corpus actions." *Fain v. Duff*, 488 F.2d 218, 223 (5th Cir. 1973). This doctrine, based on principles of comity, requires that, before a federal court will review allegations of constitutional violations by a state prisoner, those allegations must first be presented to the state's highest court for consideration. *See Pickard v. Connor*, 404 U.S. 270, 276 (1976). The habeas statute provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1). Similarly, although § 2241 itself does not contain an exhaustion requirement, case law holds that a prisoner must first exhaust his administrative remedies before bringing a claim under that statute. *See Braden v. 30th Judicial Circuit Court,* 410 U.S. 484, 490-91 (1973). *See also McClung v. Shearin,* 90 F. App'x 444, 445 (4th Cir. 2004). A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

    a.    Exhaustion

8

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—
>
>     (A) the applicant has exhausted the remedies available in the courts of the State; or
>
>     (B) (i) there is an absence of available State corrective process; or
>
>         (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

South Carolina law provides that, as to certain prison administrative decisions that affect an inmate's sentence, the inmate may seek review of an SCDC decision from the ALC. *See Al-Shabazz v. State,* 527 S.E.2d 742, 750 (S.C. 2000); *see also Slezak v. S.C. Dep't of Corr.,* 605 S.E.2d 506, 507 (S.C. 2004). These issues include situations in which an inmate is disciplined and punishment is imposed, or when an inmate believes that prison officials have erroneously calculated his sentence, sentence-related credits, or custody status. *Sullivan v. S.C. Dep't of Corr.,* 586 S.E.2d 124, 126 (S.C. 2003); *Al-Shabazz,* 527 S.E.2d at 750. Generally, a state prisoner's claim regarding credits that could impact his sentence calculation will fall within the

category of administrative issues that the South Carolina Supreme Court has identified as properly raised through the prison grievance process with appeal to the ALC, rather than through a post-conviction relief ("PCR") application filed in circuit court. *See Al-Shabazz,* 527 S.E.2d at 752. Accordingly, Petitioner's exhaustion of his state remedies begins with the SCDC administrative-grievance procedure and review by the ALC as outlined in *Al-Shabazz,* followed by appeal to the state appellate courts. *Al-Shabazz,* 527 S.E.2d at 752-57 (discussing the application of the Administrative Procedures Act and the review process); Rule 203(b)(6), SCACR; *see also* S.C. Code Ann. § 1-23-610(A)(1).[4]

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his

---

[4] This procedure, which applies for most credit-related and sentence-calculation issues, is in contrast to other habeas corpus issues that challenge the validity of the conviction itself and that generally commence in circuit court pursuant to the PCR statutes with appeal pursuant to the corresponding appellate court rules. *See generally* S.C. Code Ann. §§ 17-27-10 through 17-27-160; Rule 243, SCACR.

opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice).

        3.      Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495-96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* at 488-89. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 494. To show actual prejudice, the petitioner must demonstrate more than plain error.

    D.    Analysis

Respondent contends that this court should deny Petitioner's request to join his request for a sentence reduction to this Petition because that request is "unrelated" to the facts and legal issues involved in the Petition's proper subject matter: Petitioner's October 26, 2009 disciplinary conviction. ECF No. 22-1 at 4-5. Respondent also contends that this court should deny Petitioner's Motion for Summary Judgment because it was filed prematurely, before Respondent filed his Return to the Petition, or, alternatively, that the court should consider Respondent's Motion for Summary Judgment and the exhibits thereto as his response to Petitioner's Motion.

*Id*. at 5-6. Respondent asserts that he is entitled to summary judgment because the ALC's and the Court of Appeals' decisions that Petitioner's due-process rights were not violated in connection with the re-hearing and disciplinary-violation conviction were not unreasonable. *Id*. at 9. Respondent contends that Petitioner was not prejudiced by the DHO's consideration of additional evidence at the re-hearing or by the timing of the re-hearing because failure to follow prison policy does not amount to a due-process violation. *Id*. Also, Respondent contends that Petitioner received all the process he was due because he was given sufficient notice of the re-hearing, was allowed to have a counsel representative, was permitted to have witnesses appear on his behalf and did not object when they did not appear, and was given grievance and appeal rights. *Id*. at 9-10. Finally, Respondent contends that Petitioner fails to show that the ALC's or Court of Appeals' decisions that there was sufficient evidence presented at the re-hearing to support his disciplinary conviction was based on an unreasonable determination of facts. *Id*. at 11-12.

      Petitioner contends that his disciplinary conviction should be vacated because his due-process rights were violated by the DHO's consideration of evidence at the re-hearing which had not been admitted or used in the original hearing on this disciplinary charge, by the failure of his counsel representative to secure testimony from the witnesses whose names he provided, and by the DHO's use of a 1999, different-level disciplinary conviction as a basis for classifying his conviction as a second assault-on-employee conviction and resulting imposition of an excessive penalty. ECF No. 40 at 1-4. Petitioner also contends that his due-process rights were violated by SCDC's failure to comply with the time requirements of its inmate grievance and disciplinary policy, by the absence of any documentary evidence showing that Miller was injured, and by the absence of any explanation of the circumstances surrounding his counsel representative's failure

12

to obtain testimony from his witnesses. *Id*. at 3-4. Finally, Petitioner contends that he is entitled to a sentence reduction because he provided aid to two corrections officers when they were in danger of serious injury. *Id*. at 5.

Both the ALC and the South Carolina Court of Appeals fully considered Petitioner's contentions that his disciplinary conviction should be vacated because of due-process violations and found them to be unfounded. ECF Nos. 22-7, 22-8. The state courts properly ruled that Petitioner's many allegations of SCDC policy violations did not show that his federal constitutional rights were violated, *see Weatherholt v. Bradley*, 316 F. App'x 300, 303 (4th Cir. 2009) (citing *Myers v. Klevenhagen*, 97 F.3d 91,94 (5th Cir. 1996)), and reasonably construed SCDC's policy regarding use of additional evidence at re-hearings as placing no restriction on the DHO's consideration of Miller's personnel records for the first time at the re-hearing. The undersigned has reviewed the parties' submissions, including the transcript of Petitioner's rehearing, his SCDC grievance documents, and the state-court decisions, and agrees with Respondent that the state courts' decisions are not unreasonable applications of federal constitutional principles and are not based on unreasonable determinations of the facts. *See* 28 U.S.C. § 2254(d)(1)(2); *Williams v. Taylor*, 529 U.S. at 410.

Petitioner was provided with the required notice of the charge and the re-hearing, was allowed to have a counsel representative and to present witnesses on his behalf, received a written statement of the evidence relied on by the DHO, and was afforded post-rehearing grievance and appeal rights even if some SCDC policies were not followed to the letter. *See Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). Even though this court might believe that Petitioner's counsel representative could have better performed her apparent duties of obtaining Petitioner's witnesses' testimony and questioning Miller about the nature and extent of her

13

alleged injuries, there is *some* evidence to support the state courts' determination that Petitioner received all the process that was due him. As a result, Petitioner fails to show that he is entitled to habeas relief on this Ground. *See Williams v. Taylor*, 529 U.S. 362, 410 (2000) (federal habeas court should defer to even what it considers incorrect applications of federal law in state decisions so long as the application is reasonable).

The re-hearing transcript shows that Petitioner admitted that he hit Miller, but there was conflicting testimony from Petitioner and from Miller about whether Miller first grabbed Petitioner's neck before he hit her. ECF No. 22-3 at 3-4. In finding Petitioner guilty, the DHO made a credibility determination on this issue and chose to believe Miller's version of the events. The state courts properly deferred to the DHO's determination, and this court is also required to defer to such credibility determinations by hearing officers and trial judges. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("[F]ederal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008); *Wilson v. Ozmint*, 352 F.3d 847, 858-59 (4th Cir. 2003). Petitioner's own admissions and Miller's personnel records showing "inmate assault leave" beginning the same day of the incident between her and Petitioner and continuing for several months provided the required "some evidence" to support Petitioner's conviction for assaulting a prison employee with the intent to injure. *See Superintendent v. Hill*, 472 U.S. at 445-56, 457 (revocation of good time must be supported by some evidence). Additionally, the ALC's implicit rejection of Petitioner's contention that the DHO relied on an irrelevant prior disciplinary conviction to classify his October 29, 2009 conviction as a second conviction and to excessively penalize him was in accord with its "hands off" policy regarding agency internal policy. *See Al-Shabazz v. State*, 527 S.E.2d at 757; *Pruitt v. State*, 266 S.E.2d

779 (S.C. 1980).[5] Also, as the ALC found, ECF No. 22-7 at 4-5, Petitioner did not raise any contemporaneous objections to the counsel representative's performance at the re-hearing, nor did he interpose a clear and specific objection to her failure to bring either his witnesses or their testimony to the re-hearing. ECF No. 22-3 at 5 (Petitioner only stated "I asked her to get my witnesses" and makes no comment after she said she did not talk to them). The ALC's decision was fully reviewed and found proper by the South Carolina Court of Appeals and the state Supreme Court denied review. Each of these decisions represents reasonable application of federal precedent and each is based on reasonable application of the facts as disclosed by the record in this case. *See Cooper v. Riddle*, 540 F.2d 731, 732 (4th Cir. 1976) (federal courts are not "to assume the role of super wardens of state penal institutions . . . .").

Finally, the undersigned agrees with Respondent that this case is not an appropriate vehicle for Petitioner to press his request for a sentence reduction. His request derives from completely different facts and transactions than those involved in his challenge to his disciplinary violation, which is the only proper subject of this habeas action. Additionally, this court cannot grant the relief he seeks relative to his state sentence because it does not have authority to issue mandamus relief against the Solicitor for Marlboro County, who appears to be the only state official who can apply for the sentence reduction that Petitioner seeks. ECF No.40-2 at 2-5; *see Moye v. Clerk, DeKalb County Sup. Court*, 474 F.2d 1275, 1275-76 (5th Cir. 1973) (federal courts do not have original jurisdiction over mandamus actions to compel an officer or

---

[5] Although Petitioner's ALC brief appears to raise the "excessive sentencing" point, ECF No. 43-1 at 3 (first two points), the ALC's opinion is silent on the issue. ECF No. 22-7. The Court of Appeals' decision rejects the point without discussing its merits based on a finding that Petitioner did not argue the issue "to the ALC" and, therefore, failed to preserve it for further review. ECF No. 22-8 at 3. Regardless of whether Petitioner properly preserved the point for further review, the ALC implicitly rejected this point in connection with its complete rejection of Petitioner's many due-process and SCDC-policy challenges to his disciplinary conviction.

employee of a state to perform a duty owed to the petitioner); *see also In re Campbell*, 264 F.3d 730, 731 (7th Cir. 2001) (same; collecting cases)*; In re Carr*, 803 F.2d 1180, 1180 (4th Cir. 1986) (unpublished opinion) (same).

III.     Conclusion

Accordingly, the undersigned finds that Petitioner's Request for Joinder, ECF No. 1-3, should be denied, that Petitioner's Motion for Summary Judgment, ECF No. 18, should be denied, and that Respondent's Motion for Summary Judgment, ECF No. 22, should be granted. The Petition in this case should be dismissed with prejudice.

IT IS SO RECOMMENDED.

December 18, 2014                                                              Kaymani D. West
Florence, South Carolina                                                   United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).